UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONIQUE BLEDSOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-02109-SEB-DML |
| | ) | |
| CAPITAL ONE AUTO FINANCE A | ) | |
| Division of CAPITAL ONE (USA) N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT CAPITAL ONE AUTO FINANCE'S
MOTION TO DISMISS WITH PREJUDICE**

This matter comes before us on the remaining Defendant's, Capital One Auto Finance, a division of Capital One, N.A ("Capital One"), Motion to Dismiss Plaintiff Monique Bledsoe's Second Amended Complaint, filed on July 31, 2015, pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 37.] For the reasons explained below, Capital One's Motion to Dismiss is GRANTED.[1]

**Background and Complaint Allegations**

Ms. Bledsoe has brought this action against Capital One alleging numerous claims associated with the repossession of her vehicle, a 2011 Mitsubishi Galant (the "Vehicle"). The operative complaint is the Second Amended Complaint filed on July 21, 2015. [Dkt.

---

[1] Ms. Bledsoe filed a Motion for Judgment on the Pleadings on September 8, 2015. [Dkt. No. 41.] That motion is denied both as moot and for the separate reason that Defendant Capital One has not answered the Second Amended Complaint, and thus a motion for judgment on the pleadings is not ripe. [*See generally* Docket; Fed. R. Civ. P. 12(c) (allowing a party to move for judgment on the pleadings *after* the pleadings are closed, which does not occur until an answer is filed).]

No. 34 ("SAC").] In the SAC, Ms. Bledsoe alleges that she purchased the Vehicle on October 18, 2013 and that Capital One financed that purchase. [SAC ¶¶ 1-2.][2]

Although not attached to Ms. Bledsoe's SAC, Capital One requests that we consider the Retail Installment Contract and Security Agreement (the "Contract") signed by Ms. Bledsoe for the purchase of the Vehicle. "[I]f a document is specifically referenced by the complaint and central to the plaintiff's claim, [the Court] may consider that document as part of the pleadings if it is attached to a defendant's motion attacking the sufficiency of the complaint." *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) (citing WRIGHT & MILLER § 1337, at 762-63). According to Capital One, Ms. Bledsoe's allegations against it stem from her purchase of the Vehicle, her inability to pay the loan, and Capital One's repossession of the Vehicle. Although Ms. Bledsoe rejoins that "[t]he Contract is not central to the Plaintiff's Complaint," [Dkt. No. 39 at 4], she repeatedly refers to the Contract arguing that it is invalid and voidable, and that she lacked the ability to perform her obligations required by the Contract. As a result, we will consider the Contract in determining whether Ms. Bledsoe has stated a claim upon which relief can be granted.

Pursuant to the Contract, Ms. Bledsoe borrowed $13,805.58 to purchase the Vehicle and agreed to make monthly payments of $325.18 to Capital One for 72 months beginning

---

[2] The parties agree that Capital One was assigned the Contract. [Dkt. No. 38 at 1; Dkt. No. 39 at 2.] Based on our review of Docket Number 38-1, the agreement at issue was between Ms. Bledsoe and Champion Chrysler Jeep Dodge. It appears, however, that part of the agreement may have been cut off when scanned and transmitted to the court. Because the parties do not dispute Capital One's assignment of the Contract, we will proceed under the assumption that this is true.

in November 2013. [Contract.] The loan was secured by the Vehicle. [*Id.*] According to the terms of the Contract, if Ms. Bledsoe "fail[ed] to perform any obligation that [she had] undertaken in the Contract" or if Capital One in good faith believed that she cannot or will not perform her obligations, she would be in default [*Id.*] The parties agreed that if Ms. Bledsoe defaulted on her obligations, Capital One could immediately take possession of the Vehicle, sell the Vehicle, and apply the proceeds to Capital One's expenses and the balance due. [*Id.*] Capital One also had the right to possess personal property contained in the Vehicle at the time of repossession; however, Ms. Bledsoe had the right to recover that property. [*Id.*]

Ms. Bledsoe failed to make monthly payments on the Vehicle and, as of October 2014, owed an unpaid balance of $1,276.08. [Amended Compl. at Ex. 1 at p. 12.] According to Ms. Bledsoe, Capital One ordered its agent, Dynamic Recovery Service,[3] to pick up the Vehicle, which it did on October 18, 2014. [SAC ¶¶ 4-5.] Dynamic Recovery Service charged Ms. Bledsoe $60 for the return of the personal belongings that were in the Vehicle at the time of its repossession during which its employees were apparently rude to her. [SAC ¶¶ 9, 11-12.] Capital One informed Ms. Bledsoe that it would return her Vehicle if she paid the balance of the loan or reinstated the Contract. [*See* Dkt. No. 9-1, Am. Compl. Ex. 1 at p. 12 (indicating that Ms. Bledsoe could pay $1,686.08 to reinstate the Contract or $14,283.56 to redeem the Vehicle).] Ms. Bledsoe maintains that Capital One required

---

[3] Although Dynamic Recovery Service was a defendant in previous versions of Ms. Bledsoe's Complaint, it is no longer a party to this case. [*See generally* SAC.]

3

proof of employment to reinstate the Contract, which she did not have. [SAC ¶¶ 5-6.] On October 19, 2014, Ms. Bledsoe demanded that Capital One return the Vehicle or pay her the Vehicle's value plus reasonable fees, totaling $13,692.05 (which corresponds to the amount she financed to purchase the Vehicle). [*Id.* ¶¶ 8, 14-15 (Ms. Bledsoe sent two additional letters demanding the Vehicle and/or damages); Dkt. No. 38-1 (Contract).]

The essence of Ms. Bledsoe's claims in this lawsuit are that Capital One repossessed the Vehicle after she was unexpectedly unemployed and temporarily unable to make the payments due under the Contract. Despite her attempts to renegotiate the terms of her Vehicle loan, Ms. Bledsoe complains that Capital One refused to return her Vehicle. Included in her SAC are claims for conversion, intentional infliction of emotional distress, extortion, tortious interference, breach of duty, willful disregard, abuse of process, and misrepresentation.

## Analysis

Ms. Bledsoe is proceeding here *in forma pauperis* and, as a result, her complaint must be assessed under the standard established in 28 U.S.C. § 1915(e)(2). That statute directs the court to dismiss a complaint or any claim within a complaint which "(1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such relief." *Id.* In the procedural context of a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059,

1060 (7th Cir. 2009).[4] The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Bledsoe has been granted two opportunities to amend her complaint. Most recently, on the grounds that Ms. Bledsoe may intend to plead a Federal Debt Collection Practices Act claim, the Magistrate Judge allowed Ms. Bledsoe to amend her complaint. As the district court, we have a "special responsibility to construe *pro se* complaints liberally and [] allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006) (citing *Donald v. Cook County Sheriff's Dept.*, 95 F.3d

---

[4] Ms. Bledsoe mistakenly construes Capital One's statement that it must "take[] the allegations in the Complaint as true" [Dkt. No. 38 at 2], as an admission of the SAC's allegations. [*See* Dkt. No. 42 at 1 (Ms. Bledsoe seeks judgment on the pleadings on the grounds that Capital One accepted the SAC fact allegations are true).] Capital One has not admitted Ms. Bledsoe's allegations. It accepted her allegations as true only for purposes of its Motion to Dismiss, which means even if the facts alleged in the SAC are true, the law does not support this claim.

548, 555 (7th Cir.1996)). It is through this lens of solicitousness and liberal construction that we consider Capital One's Motion to Dismiss.[5]

Capital One seeks to dismiss the SAC on the grounds that Ms. Bledsoe fails to state a claim upon which relief can be granted. [Dkt. No. 38.] In her rejoinder, Ms. Bledsoe contends that the Contract is invalid and voidable because her capacity to pay changed in a material way after she became unemployed, an event that was not foreseeable by either party. [Dkt. No. 39 at 2-3.]

### 1. Conversion of Property (Count I)

Ms. Bledsoe alleges that Capital One had no lawful right to take the Vehicle from her and in doing so committed criminal conversion under Indiana Code § 35-32-2-2. [SAC ¶¶ 20-23.] She contends that Capital One's repossession breached the peace in contravention of the parties' Contract. [Dkt. No. 39 at 2-3.]

"To prove conversion, a plaintiff must demonstrate that the defendant exerted unauthorized control over property of another." *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1058 (S.D. Ind. 2011) (internal citations and quotations omitted). Ms. Bledsoe maintains that the Contract is unenforceable and, as a result, Capital One did not have the right to repossess her Vehicle. Capital One rejoins that Ms. Bledsoe failed to

---

[5] Even with an understanding eye, we cannot decipher the factual or legal significance of Ms. Bledsoe's allegation in the SAC that:

> In addition to the aforementioned details surrounding the contract, equal consideration was not made, as it seems highly inequitable that the Defendant has the capacity to simply create and influence the currency in which the debt is based, through fractional reserves, but that the Plaintiff is limited to rendering labor for the same currency, if enough of it is made available.

[SAC at 2.]

make payments as required by the parties' agreement and that the Contract gave Capital One the right to repossess the Vehicle. [Dkt. No. 37 at 4.] If Capital One had the right to repossess the Vehicle, it could not be deemed to have committed conversion and no conversion claim exists for which relief can be granted.

Ms. Bledsoe does not expressly allege in the SAC that she failed to make the requisite Contract payments; however, she impliedly admits as much in the SAC and her response to Capital One's Motion to Dismiss. Ms. Bledsoe agrees that the Contract required her to make payments equal to or greater than $325.18 [Dkt. No. 39 at 2], but that she made partial payments to Capital One in May, June, and July of 2014 [*id.* at 3].[6] Further, Ms. Bledsoe "attaches" to her SAC (by reference to the exhibits filed with the prior versions of her complaint) letters from Capital One detailing the past due amounts on the Contract. She does not dispute the veracity of those documents.

At a minimum, Ms. Bledsoe alleges reasons sufficient to form a good faith belief that she could not and would not perform her obligations under the Contract. Contending that her unemployment status made the Contract "impossible to perform" as written, Ms. Bledsoe states that she had an "inability to remit payment" and the Contract was "temporarily impossible." [Dkt. No. 39 at 2, 3; SAC at 2.] She does not allege in her SAC, or elsewhere, that she was fulfilling her Contract obligations at the time of Capital One's

---

[6] Ms. Bledsoe contends that the partial payments were offers that were accepted by Capital One [Dkt. No. 39 at 3]; however, she does not allege that the parties altered the terms of the Contract. The Contract specifies that partial payments "will not excuse any later scheduled payment." [Contract.] Further, any amendments to the Contract were required to be in writing and signed by the parties, which Ms. Bledsoe does not allege occurred here. *See* Ind. Code § 26-2-9-4.

7

repossession.[7] Because Ms. Bledsoe admits that she was not making and, indeed, could not make her Vehicle payments as required by the Contract, Capital One had the right to repossess the Vehicle. [Contract at 2 ("We may immediately take possession of the Property by legal process or self-help but in doing so we may not breach the peace of unlawfully enter onto your premises.").] Consequently, Ms. Bledsoe fails to state a claim for conversion on which relief can be granted and that claim must be dismissed.

Ms. Bledsoe makes reference to Capital One's repossession as "breaching the peace," although it is unclear whether Ms. Bledsoe intends to assert a separate claim or if this allegation is part of her conversion claim. Even if Capital One acted beyond its right in repossessing the Vehicle, "to avoid breaching the peace, '[t]he general rule is that the creditor cannot utilize force or threats, cannot enter the debtor's residence without consent, and cannot seize any property over the debtor's objections.'" *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 8 (Ind. Ct. App. 1998) (citation omitted). Ms. Bledsoe's SAC includes no allegations that Capital One entered her residence or took the Vehicle by force or threats, or that she objected to the repossession of the Vehicle prior to Capital One's

---

[7] Ms. Bledsoe phrases her claim in these words: "Plaintiff was *Unconscionable* of the events leading to her unemployment and inability to remit payment, thus *lacked the capacity* to be secure in The Contract." [Dkt. No. 39 at 2.] Ms. Bledsoe's use of the term "unconscionable" is a misnomer. "A contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms." *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 303 (Ind. Ct. App. 2015) (citations omitted). Ms. Bledsoe's allegations of unconscionability, lack of capacity, and mistake all relate to her change in employment status *after* the Contract was entered into in October, 2013. Ms. Bledsoe makes no allegations that at the time she signed the Contract she was forced into unwillingly or unaware of its terms.

seizing it. Accordingly, this part of Ms. Bledsoe's SAC fails to state a claim for breach of the peace.

**2.      Intentional Infliction of Emotional Distress (Count II)**

In her Intentional Infliction of Emotional Distress ("IIED") claim, Ms. Bledsoe alleges that Capital One caused Dynamic Recovery Service to possess her Vehicle and "intentionally rob[] [her] of perceived and accepted value and caused financial hardship and emotional distress." [SAC ¶ 26.] Ms. Bledsoe claims that Capital One provoked her and caused her distress by ignoring her communications and "right to reclaim" the Vehicle which she describes as "psychological warfare and attempts to use an article of her affection to persuade contractual agreements to her financial detriment." [*Id.* ¶ 27.]

Capital One argues that Ms. Bledsoe fails to allege any conduct to support an IIED claim. [Dkt. No. 38 at 5.] The requisite elements of a claim for IIED are that the defendant "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes severe emotional distress to another." *Brown v. Indianapolis Hous. Agency*, 971 N.E.2d 181, 188 (Ind. Ct. App. 2012). The Restatement (Second) of Torts § 46, cmt. d (1965), as cited by Indiana Court of Appeals provides:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the

> community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (cited by *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App.1999)). "IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Brown*, 971 N.E.2d at 188 (citing *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind. Ct. App. 2011)).

Here, Ms. Bledsoe's allegations that Capital One repossessed her Vehicle after she failed to make payments and, in her words, making payment became "impossible," do not "go[] beyond all possible bounds of decency."[8] Assuming Ms. Bledsoe's allegations that Capital One refused to renegotiate her loan or return the Vehicle, those acts cannot be regarded as "atrocious" or "utterly intolerable in a civilized community." These are not circumstances under which a reasonable fact finder would conclude that Capital One engaged in "extreme and outrageous" conduct. Accordingly, Ms. Bledsoe has failed to state a claim of intentional infliction of emotional distress on which relief can be granted and her claim is dismissed.

## 3.     **Extortion (Count III)**

Ms. Bledsoe alleges in her extortion claim that Capital One "communicated intent to exact payment under duress as shown in the exhibits attached to this claim." [SAC ¶ 30.] Specifically, Ms. Bledsoe points to the receipt from Dynamic Recovery to retrieve her

---

[8] Ms. Bledsoe accuses Dynamic Recovery Service of "flinging" her belongs at her, acting in a "brash and hostile" manner, and "threatening to call the police." [SAC ¶¶ 11-12.] Even assuming that Dynamic Recovery treated Ms. Bledsoe as she describes, she does not allege that Capital One treated her in that fashion and, as a result, those allegations cannot form the basis of her IIED claim against Capital One.

personal property [Dkt. No. 9-1] and the letter from Capital One informing Ms. Bledsoe that she could redeem her Vehicle any time before Capital One sold it by paying the redemption amount (i.e., paying the total owed on the Vehicle) or the reinstatement amount (i.e., paying the payments owed to date plus expenses). [SAC ¶ 30.] Citing to 18 U.S.C. § 892, Ms. Bledsoe claims that Capital One's threat and action to sell the Vehicle were against her will. [*Id.* ¶ 31.]

Capital One seeks to dismiss Ms. Bledsoe's extortion claim on the grounds that neither the federal extortion statute nor any Indiana law supports an independent civil claim for extortion. Ms. Bledsoe cites to a federal criminal statute authorizing criminal prosecution for "making extortionate extensions of credit." 18 U.S.C. § 892. This criminal law does not authorize a civil claim for extortion.

Capital One notes that the federal extortion statute found at 18 U.S.C. § 1951 is also known as the Hobbs Act. However, no independent civil claim exists under the Hobbs Act either. *Trevino v. Pechero*, 592 F. Supp. 2d 939, 947 (S.D. Tex. 2008) (collecting cases that hold 18 U.S.C. § 1951 does not create a private right of action); *Int'l Profit Assocs. v. Paisola*, 461 F. Supp.2d 672, 678, n.8 (N.D. Ill. 2006) (requiring an articulated theory of extortion). Ms. Bledsoe has not identified any law on which to base a civil claim of extortion, and we know of none either. Consequently, her SAC fails to state an extortion claim upon which relief can be granted, and must be dismissed.

### 4. Tortious Interference (Count IV)

In her tortious interference claim, Ms. Bledsoe alleges that Capital One conspired with Dynamic Recovery to "execute a 'self-help' possession causing financial penalty and

11

preventing the plaintiff from maintaining the account to secure possession of her property." [SAC ¶ 34.] Ms. Bledsoe accuses Dynamic Recovery, a non-party, of being aware of her relationship with Capital One, removing Ms. Bledsoe's property, and aiding Capital One to end its relationship with her. [SAC ¶¶ 35-37.] Capital One argues that it cannot interfere with its own contracts or own business relationships and thus Ms. Bledsoe's claim fails as a matter of law.

Ms. Bledsoe does not explain whether this claim is rooted in an alleged interference with her Contract or her business relationship with Capital One. In an effort to construe her SAC liberally, we will consider her facts under both theories. Tortious interference with a contract requires: "(i) existence of a valid and enforceable contract; (ii) defendant's knowledge of the existence of the contract; (iii) defendant's intentional inducement of breach of the contract; (iv) the absence of justification; and (v) damages resulting from defendant's wrongful inducement of the breach." *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994). "A party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party." *Trail v. Boys & Girls Clubs*, 845 N.E.2d 130, 138 (Ind. 2006); *see also George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1334 (7th Cir. 1983). The Contract at issue was between Capital One and Ms. Bledsoe. Because Capital One cannot interfere with its own contracts, a claim that Capital One interfered with the Contract fails to state a claim upon which relief can be granted.

Indiana also recognizes an action for tortious interference with business relationships. The elements of this claim parallel those of tortious interference with

contract: the existence of a business relationship, defendant's knowledge of that relationship, intentional interference with the relationship through unlawful acts, absence of justification, and damages. *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667, 686 (S.D. Ind. 1998). Defendants cannot tortiously interfere with their own business relationships or their own contractual relationship with the plaintiff. *See Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 12-13 (Ind. Ct. App. 2010) The business relationship alleged by Ms. Bledsoe is between her and Capital One. [SAC ¶¶ 35-36.] Again, because Capital One cannot interfere with its own business relationships, a claim that Capital One interfered with its relationship with Ms. Bledsoe fails to state a claim as a matter of law.[9]

## 5. Breach of Duty (Count V)

Ms. Bledsoe asserts a claim for "breach of duty" against Capital One. In the SAC, she alleges:

> 41. CAPITAL ONE AUTO FINANCE acted to the detriment of the Plaintiff. WHEREAS, The Defendant, a National Bank, serves the purpose to negotiate credit on behalf of the Plaintiff.
>
> 42. The Defendants actions were neither advised nor approved by the Plaintiff and caused direct harm, thus they have breached their duty, of maintaining the peace, to the Plaintiff.

[SAC ¶¶ 41-42.] The SAC includes no additional information related to Ms. Bledsoe's allegation that Capital One owed her a duty and does not cite any duty created by the Contract.

---

[9] Many of Ms. Bledsoe's allegations in Count Four, Tortious Interference, are directed at Dynamic Recovery. Dynamic Recovery is not a party to the SAC.

Citing to Indiana law, Capital One asserts that it did not owe a fiduciary duty to Ms. Bledsoe as her lender. "Execution of a contract in support of a bank loan, in itself, falls far short of creating a fiduciary relationship." *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 945 (7th Cir. 1989). "Absent special circumstances, a lender does not owe a fiduciary duty to a borrower." *Paul v. Home Bank SB*, 953 N.E.2d 497, 504 (Ind. Ct. App. 2011); *IP of a W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 686 F.3d 361, 371 (7th Cir. Ind. 2012). "[A] business or 'arm's length' contractual relationship does not give rise to a fiduciary relationship. That is, the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence." *Paul*, 953 N.E.2d at 504.

The only relationship alleged by Ms. Bledsoe is a contractual one between a creditor and a debtor. As explained above, absent a special circumstance, which is not alleged here, Capital One as a lender does not owe a fiduciary duty to Ms. Bledsoe as a borrower. Consequently, Ms. Bledsoe's claim for breach of duty fails to state a claim upon which relief can be granted and is dismissed.

### 6. **Willful Disregard (Count VI)**

In her claim for "willful disregard," Ms. Bledsoe alleges:

46. Pursuant to the communications mailed to Monique Bledsoe from CAPITAL ONE, hereto attached, it was Defendant's intent to bring form to the actions that damaged Plaintiff.

47. CAPITAL ONE has foreseeable knowledge of the impact of their actions, as they were notified by the Plaintiff as to their displacement of her, prior to the sale of her property.

14

> 48. Indiana recognizes willful disregard in section 8-1-29.5-6(4) of the Indiana Code.

[SAC ¶¶ 46-48.] Capital One seeks to dismiss this claim on the grounds that Indiana does not recognize a claim for "willful disregard."

The statute cited by Ms. Bledsoe pertains to "Utilities and Transportation" and "Enforcement Remedies for Prohibited Actions by Telecommunications Service Providers and Video Service Providers." Ind. Code § 8-1-29.5. Section 6(b)(4) of that statute imposes civil penalties for willful disregard by a telecommunications provider. Ms. Bledsoe has supplied no facts in her SAC to support a claim pursuant to Indiana Code § 8-1-29.5-6. We are not aware of any cause of action for "willful disregard" under state or federal law and, as a result, Ms. Bledsoe's claim is dismissed.

### 7. Abuse of Process (Count VII)

With regard to her abuse of process claim, Ms. Bledsoe alleges that the actions of Capital One "are extreme measures to negotiate an account" and Capital One "neglected to take any course of action for legal possession of the [Vehicle]." [SAC ¶ 50.] It is Ms. Bledsoe's position that Capital One should have given "Notice or to maintain Peace," that she was denied due process,[10] and that she was charged an "unconsented" penalty. [*Id.* ¶¶ 51-52.]

---

[10] The language used by Ms. Bledsoe implies a constitutional due process violation. Ms. Bledsoe could not make a due process claim against Capital One because the Fourteenth Amendment is directed at state action which is neither alleged nor implied here. *See Snyder v. Smith*, 7 F. Supp. 3d 842, 856-57 (S.D. Ind. 2014).

Some of the allegations advanced by Ms. Bledsoe in her abuse of process claim are similar to those asserted in her claims for extortion, intentional infliction of emotional distress, and breach of peace. We have discussed those claims *supra* and will not repeat our analysis or conclusions here.

The tort of abuse of process results when a party uses the litigation process for an improper purpose and requires a showing of "(1) ulterior purpose or motive; and (2) a willful act in the use of process not proper in the regular conduct of a proceeding." *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963 (7th Cir. 2010). It "is a prime example of litigating in bad faith." *Nightingale Home Healthcare, Inc.*, 626 F.3d at 963; *see also Comfax Corp. v. North Am. Van Lines*, 638 N.E.2d 476, 481 (Ind. Ct. App. 1994) ("In a common law abuse of process claim, the party asserting abuse of process must show an ulterior motive and use of process that would not be proper in the normal prosecution of the case.").

Ms. Bledsoe does not allege that Capital One initiated any litigation against her. Without allegations that Capital One used the litigation process for an improper purpose, Ms. Bledsoe cannot advance a claim for abuse of process, and her claim is therefore dismissed.

**8.     Misrepresentation (Count VIII)**

During a June 17, 2015 pretrial conference with the Magistrate Judge, Ms. Bledsoe expressed a desire to amend her complaint and allege an FDCPA claim. [*See* Dkt. No. 33.]

The Magistrate Judge allowed Ms. Bledsoe to seek leave to amend her complaint, which she did. [*See id.*]

Ms. Bledsoe alleges that Capital One violated 15 U.S.C. § 1692e when it made material misrepresentations by distorting facts in the documents attached to the complaint. [SAC ¶ 54.] In paragraphs 53-58 of the SAC, Ms. Bledsoe contends that Capital One was aware that it had no legal right to the Vehicle based on its correspondence describing the Vehicle as "your," referring to Ms. Bledsoe's ownership of the Vehicle. [SAC ¶ 55.] Ms. Bledsoe also asserts that Capital One "mailed several misleading documents" related to the possible reinstatement of her account and that those documents conflicted with Ms. Bledsoe's telephone communications with Capital One. [*Id.* ¶ 13.] She alleges that Capital One's repossession of the Vehicle was in violation of 15 U.S.C. § 1692d because she was "oppressed" by the repossession. [*Id.* at 2.]

Title 15 U.S.C. § 1692e is a section of the Fair Debt Collection Practices Act ("FDCPA"). This section prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt," and recovery of civil damages for violations are specified in 15 U.S.C. § 1692k.[11] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

---

[11] At the beginning of the SAC, Ms. Bledsoe references 15 U.S.C. § 1592k(d), which does not exist. However, consistent with her request to the Magistrate Judge and her references to the FDCPA later in her SAC, we assume that Ms. Bledsoe was referencing 15 U.S.C. § 1692k and we consider her claim under this statute. This assumption is shared by Capital One which argues that Ms. Bledsoe cannot state a claim under the FDCPA. [Dkt. No. 38 at 11.]

17

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A creditor collecting its own debts is not a "debt collector" under the FDCPA unless it uses a name other than its own to collect the debt. *Id.*

Ms. Bledsoe alleges that Capital One financed her purchase of the Vehicle and that its repossession and sale of her Vehicle violated 15 U.S.C. § 1692e. [SAC ¶¶ 2, 54.][12] Because Capital One was attempting to collect its own debt from Ms. Bledsoe, it is not a "debt collector" as defined by the FDCPA. *See E\*Trade Consumer Fin. Corp. v. Needles*, No. 2:04-CV-375-PRC, 2005 WL 2674930, at \*6 (N.D. Ind. Oct. 20, 2005). As a result, Ms. Bledsoe fails to state a claim for violation of the FDCPA.

To the extent that Ms. Bledsoe is attempting to assert a claim for negligent misrepresentation, that claim fails as well. Indiana recognizes the tort of negligent misrepresentation only in the limited context of an employer-employee relationship. *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 584 (Ind. Ct. App. 1999) (citing *Short v. Haywood Printing Co., Inc.* (1996) Ind. App., 667 N.E.2d 209, 213, *trans. denied; Pugh's IGA, supra,* 531 N.E.2d at 1199, n. 1 (citing *Wilson v. Palmer* (1983) Ind. App., 452 N.E.2d 426; *Essex v. Ryan* (1983) Ind. App., 446 N.E.2d 368)). To the extent Ms. Bledsoe makes

---

[12] In her response to Capital One's Motion to Dismiss, Ms. Bledsoe states that "it is not clear whether The Contract was *assigned* to CAPITAL ONE, making it in fact the 'debt collector' it claims not to be on page 11 of its Motion to Dismiss, . . . ." [Dkt. No. 39 at 2.] Ms. Bledsoe has previously alleged that Capital One financed her vehicle purchase [SAC ¶ 2], and thus whether the Contract was assigned to Capital One does not affect the analysis to determine if Capital One is a debt collector as defined by the FDCPA. Ms. Bledsoe has alleged that the debt Capital One sought to collect was its own.

18

a claim for negligent misrepresentation, it fails to state a claim upon which relief can be granted because Ms. Bledsoe does not allege an employer-employee relationship with Capital One.

Finally, Ms. Bledsoe's claim for misrepresentation could be construed as a claim for fraud. She alleges that Capital One knew it had no legal right to her property and sent her letters that misrepresented to her Capital One's right to her property. [SAC ¶¶ 54-55.] Under Indiana law, plaintiffs must plead the following elements for a fraud claim:

> (1) a false statement of present or past material fact; (2) knowledge that the statement, when made, was false or made "recklessly without knowledge of its truth or falsity"; (3) intent to induce another party to act on the statement; (4) actual reliance by the other party; and (5) the proximate result of [an] injury to the other party. *Craig & Landreth, Inc. v. Mazda Motor of Am., Inc.,* 744 F.Supp.2d 818, 829 (S.D. Ind.2010) (citing *Rice v. Strunk,* 670 N.E.2d 1280, 1289 (Ind.1996)). These allegations must appear in the complaint itself. *See MDG Int'l, Inc. v. Australian Gold, Inc.,* No. 1:07-cv-1096–SEB–TAB, 2008 WL 3982072, at *2 (S.D. Ind. Aug. 22, 2008).

*Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1123 (S.D. Ind. 2011). Ms. Bledsoe does not allege that Capital One made misstatements for the purpose of inducing Ms. Bledsoe to take any action.[13] Reading the SAC as a whole, Ms. Bledsoe could be alleging that Capital One was attempting to coerce Ms. Bledsoe to agree to new terms of a Vehicle loan [*see* SAC ¶ 5]; however, she does not allege that she actually agreed to new contract terms. In fact, Ms. Bledsoe alleges that the Vehicle was sold at auction.

---

[13] The misrepresentations alleged by Ms. Bledsoe relate to Capital One's right to repossess the Vehicle. These allegations are contradicted by the Contract which gives Capital One the right of repossession if Ms. Bledsoe defaults on her obligation.

Additionally, Ms. Bledsoe's damages appear to be unrelated to the alleged misrepresentations. She alleges injury from the loss of her Vehicle [SAC ¶ 57 (damages from the auction of her Vehicle)], and not from the alleged misrepresentations. Ms. Bledsoe has not plead the requisite elements for a fraud claim and, based on her allegations, she could not amend her complaint to do so. For these reasons, she fails to state a claim for intentional misrepresentation (i.e., fraud) upon which relief can be granted and that claim is dismissed.

## Conclusion

For the foregoing reasons, we GRANT Capital One's Motion to Dismiss Plaintiff's Second Amended Complaint WITH PREJUDICE. Plaintiff fails to state a claim upon which relief can be granted. Final judgment shall issue accordingly.

Date: _3/31/2016_

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MONIQUE BLEDSOE
3445 Woodfront Drive
Indianapolis, IN 46222

Carl Anthony Greci
FAEGRE BAKER DANIELS
carl.greci@faegrebd.com

Dustin R. DeNeal
FAEGRE BAKER DANIELS LLC -- Indianapolis North
dustin.deneal@faegrebd.com